**Electronically Filed
Intermediate Court of Appeals
CAAP-11-0000612
29-NOV-2012
10:05 AM**

NO. CAAP-11-0000612

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


KIMBERLY K.F. WILSON,
Claimant-Appellant,
v.
STATE OF HAWAI'I, DEPARTMENT OF HEALTH,
Employer-Appellee, Self-Insured


APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS APPEALS BOARD
(CASE NO. AB 2007-479(M) (7-03-10114))


MEMORANDUM OPINION
(By: Foley, Presiding J., Fujise and Leonard, JJ.)

Claimant-Appellant Kimberly K. F. Wilson (Wilson) appeals from the Decision and Order (D&O) of the Labor and Industrial Relations Appeals Board (LIRAB) filed July 22, 2011, affirming the Disability Compensation Division, Department of Labor and Industrial Relations' (DLIR) October 16, 2007 decision in favor of self-insured Employer-Appellee State of Hawai'i, Department of Health (DOH). The decision found the DOH not liable for medical treatment Wilson received from May 7, 2004 to December 1, 2006.

## I. BACKGROUND

On March 19, 2003, Wilson suffered an injury while employed by the DOH, and she submitted a workers' compensation

claim. The State Workers' Compensation Division, which administers and processes workers' compensation claims for the DOH and other state agencies, assigned a claims adjuster (adjuster) to Wilson's case and instructed interested parties to direct further correspondence to the adjuster.

The adjuster contacted Wilson to discuss her claim and ongoing treatment. The adjuster informed Wilson that the DOH accepted liability temporarily through September 4, 2003 but denied further liability pending an independent medical examination (IME) by Lorne Direnfeld, M.D. (Dr. Direnfeld). The adjuster also confirmed that Marcus Griffin, M.D. (Dr. Griffin) would be Wilson's attending physician and that only disability certifications from Dr. Griffin would be honored. Wilson had already obtained treatment and consultations from a number of doctors, and the adjuster informed Wilson that other primary care providers would no longer be honored and that all referrals were subject to the DOH's approval.

Dr. Direnfeld conducted an IME of Wilson, and his medical opinion concluded she had suffered a compensable neck injury, but her ongoing condition was unrelated to her work injury. The adjuster informed Wilson and Dr. Griffin that, based on Dr. Direnfeld's opinion, the DOH contested liability for further medical services, effective March 11, 2004. The DLIR conducted a hearing and issued a decision on June 7, 2004, crediting Dr. Direnfeld's post-IME medical opinion and relieving the DOH of further liability for Wilson's treatment after March 11, 2004. Wilson appealed the DLIR's decision to the LIRAB on June 15, 2004.

In the time between the DLIR decision and the LIRAB hearing, Wilson received further treatment from Dr. Griffin and from a number of out-of-state health care providers. The record is devoid of any approved treatment plan provided by Dr. Griffin during the relevant time period. Dr. Griffin referred Wilson to

2

the Mayo Clinic on March 29, 2004, but nothing in the record indicates when, if ever, the DOH received this referral. On May 7, 2004, Wilson received treatment from Dr. Griffin at the Kihei-Wailea Medical Center. On June 17, 2004, Wilson permanently relocated from Hawaiʻi and underwent surgery at the Mayo Clinic in Minnesota on June 30, 2004. She continued to receive further treatment from the Mayo Clinic and also received treatment from Altru Health System, Altru Hospital, and Laidlaw Psychological Services. Nothing in the record indicates Wilson submitted a request for change of physicians or referrals for the treatment she received from any of these health care providers. The earliest clear indication that the DOH had received actual notice of Wilson's out-of-state treatment is from late January 2005, when the Mayo Clinic first communicated with the adjuster regarding payment.

On October 12, 2005, the LIRAB held a hearing on Wilson's appeal. The LIRAB received testimony from Nicholas Maragos, M.D. (Dr. Maragos), Wilson's doctor at the Mayo Clinic, and from Dr. Direnfeld, who had changed his opinion after reviewing Dr. Maragos's reports. The DOH denied liability on the grounds that Wilson's ongoing condition was unrelated to her work injury; nothing in the record indicates the DOH mentioned the lack of a treatment plan or referral for Wilson's treatment. The LIRAB credited the doctors' testimony and issued a decision on January 11, 2006, vacating the DLIR's decision and concluding Wilson was entitled to continuing medical care after March 11, 2004.

On December 6, 2006, Wilson's attorney wrote to the adjuster seeking payment of Wilson's treatment from the Mayo Clinic, Altru Hospital, Altru Health System, and Laidlaw Psychological Services, and for her treatment from Kihei-Wailea Medical Center on May 7, 2004. On May 31, 2007, Wilson's

3

attorney filed a request for a hearing based on the DOH's refusal to pay benefits.

On August 23, 2007, the DLIR held a hearing on the issue of whether the DOH was liable for the medical treatment Wilson had received from May 7, 2004 to December 1, 2006. The DOH denied liability for these treatments because Wilson had failed to submit WC-2 Physician's Reports, treatment plans, or requests for consultations and concurrent treatment during the relevant period as required by Hawai'i Revised Statutes (HRS) Chapter 386 and its related rules. The DLIR's decision, issued October 16, 2007, credited the DOH's evidence and found the DOH not liable.

Wilson timely appealed the DLIR's decision to the LIRAB, and on July 22, 2011, the LIRAB issued the D&O affirming the DLIR's decision and concluding the DOH was not liable for Wilson's medical treatment from May 7, 2004 to December 1, 2006. Wilson timely filed this appeal on August 12, 2011.

On appeal, Wilson contends the LIRAB erred as a matter of law in finding the following Findings of Fact (FOFs):

. . . .

> 9. The Board finds that the foregoing "Referral" [completed by Dr. Griffin referring Wilson to Mayo Clinic] does not meet the requirements of Sections 12-15-42 or 12-15-40 of the Hawaii Workers' Compensation Medical Fee Schedule.

> 10. Nicholas E. Maragos, M.D., a physician at the Mayo Clinic, identified himself as the attending physician on a WC-2 Physician's Report form ("WC-2") dated September 13, 2006 and Claimant, during her deposition, described him as the "commander" of her medical treatment. However, there was no request that Claimant be allowed a change in attending physician, and Dr. Griffin remained Claimant's attending physician during the relevant time period.

> . . . .

> 13. The Board finds that the medical care, services, and supplies provided by Altru Health Systems, Laidlaw Psychological Services, and Mayo clinic were not directed by her attending physician, Dr. Griffin.

4

Wilson also challenges the following language from the LIRAB's Conclusion of Law (COL):

> [T]he Board concludes that Employer is not liable for medical care, services, or supplies provided by Altru Health Systems, Laidlaw Psychological Services, and Mayo Clinic from May 7, 2004 to December 1, 2006. Said services were not requested by or even directed by Claimant's attending physician. . . . The Board further concludes that with regard to medical care, services, or supplies provided by Dr. Griffin, that the same were not provided pursuant to a valid Workers' Compensation Treatment Plan.

## II. STANDARDS OF REVIEW

"Review of a decision made by a court upon its review of an administrative decision is a secondary appeal. The standard of review is one in which [the appellate] court must determine whether the court under review was right or wrong in its decision." *Lanai Co. v. Land Use Comm'n*, 105 Hawai'i 296, 306-07, 97 P.3d 372, 382-83 (2004) (*quoting Soderlund v. Admin. Dir. of the Courts*, 96 Hawai'i 114, 118, 26 P.3d 1214, 1218 (2001)) (internal quotation marks and citation omitted).

Appellate review of the LIRAB's decision is governed by HRS § 91-14(g) (1993), which provides that:

> Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:
>
> (1) In violation of constitutional or statutory provisions; or
>
> (2) In excess of the statutory authority or jurisdiction of the agency; or
>
> (3) Made upon unlawful procedure; or
>
> (4) Affected by other error of law; or
>
> (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
>
> (6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

"Under HRS § 91-14(g), [conclusions] are reviewable under subsections (1), (2), and (4); questions regarding procedural defects are reviewable under subsection (3); [findings] are reviewable under subsection (5); and an

5

agency's exercise of discretion is reviewable under subsection (6)." *Potter v. Hawai'i Newspaper Agency*, 89 Hawai'i 411, 422, 974 P.2d 51, 62 (1999) (internal quotation marks and citations omitted).

"'[T]he courts may freely review an agency's conclusions of law.'" *Lanai Co.*, 105 Hawai'i at 307, 97 P.3d at 383 (quoting *Dole Hawaii Div.-Castle & Cooke, Inc. v. Ramil*, 71 Haw. 419, 424, 794 P.2d 1115, 1118 (1990)). The LIRAB's conclusions will be reviewed de novo, under the right/wrong standard. *Tate v. GTE Hawaiian Tel. Co.*, 77 Hawai'i 100, 103, 881 P.2d 1246, 1249 (1994) (citing *State v. Furutani*, 76 Hawai'i 172, 180, 873 P.2d 51, 59 (1994)).

"An agency's findings are reviewable under the clearly erroneous standard to determine if the agency decision was clearly erroneous in view of reliable, probative, and substantial evidence on the whole record." *Poe v. Hawai'i Labor Relations Bd.*, 87 Hawai'i 191, 195, 953 P.2d 569, 573 (1998) (citing *Alvarez v. Liberty House, Inc.*, 85 Hawai'i 275, 277, 942 P.2d 539, 541 (1997); HRS § 91-14(g)(5)). "'An agency's findings are not clearly erroneous and will be upheld if supported by reliable, probative and substantial evidence unless the reviewing court is left with a firm and definite conviction that a mistake has been made.'" *Poe v. Hawai'i Labor Relations Bd.*, 105 Hawai'i 97, 100, 94 P.3d 652, 655 (2004) (quoting *Kilauea Neighborhood Ass'n v. Land Use Comm'n*, 7 Haw. App. 227, 229-30, 751 P.2d 1031, 1034 (1988)).

<u>Tauese v. State of Hawai'i, Dep't of Labor & Indus. Relations</u>, 113 Hawai'i 1, 25, 147 P.3d 785, 809 (2006).

In determining whether an agency determination should be given deference, the standard to be applied is as follows:

> [W]hen reviewing a determination of an administrative agency, we first decide whether the legislature granted the agency discretion to make the determination being reviewed. If the legislature has granted the agency discretion over a particular matter, then we review the agency's action pursuant to the deferential abuse of discretion standard (bearing in mind that the legislature determines the boundaries of that discretion). If the legislature has not granted the agency discretion over a particular matter, then the agency's conclusions are subject to de novo review.

*Paul's Electrical Service, Inc. v. Befitel*, 104 Hawai'i 412, 419-20, 91 P.3d 494, 501-[02] (2004).

<u>Olelo: The Corp. for Cmty. Television v. Office of Info. Practices</u>, 116 Hawai'i 337, 344, 173 P.3d 484, 491 (2007).

## III.  DISCUSSION

### A.  Applicability Of Workers' Compensation Law To Wilson's Treatment

This case requires us to interpret provisions of the Hawai'i Revised Statutes Chapter 386 and Hawai'i Administrative Rules (HAR) Title 12, Chapter 15 to ascertain to what extent our workers' compensation laws apply to out-of-state health care providers.[1]  Specifically, Wilson contends the requirements of HAR §§ 12-15-38, 12-15-40, and 12-15-42 should not apply to the treatment she received from out-of-state health care providers. HAR § 12-15-38 states "[c]hanges in attending physician by the injured employee subsequent to the first change require prior approval by the director [of the DLIR] or DOH."  HAR §§ 12-15-40 and 12-15-42 state "the attending physician shall obtain permission from the DOH" before initiating a referral for concurrent treatment or for consultation by another health care provider.

Wilson does not dispute that Dr. Griffin failed to submit a treatment plan or referrals for Wilson's treatment during the period at issue.  However, Wilson contends the LIRAB erred as a matter of law by requiring Wilson's out-of-state health care providers to comply with Hawai'i's requirements. Wilson points out that neither HRS Chapter 386 nor the administrative rules contain any specific provisions regarding treatment by out-of-state health care providers for employees who permanently relocate.  Because of this ambiguity, and because HRS § 386-26 (1993) characterizes the rules in HAR Title 12, Chapter

---

[1]     The DOH correctly asserts that Wilson raised this point for the first time on appeal, and generally the appellate court "will not consider an issue not raised below unless justice so requires." Bitney v. Honolulu Police Dept., 96 Hawai'i 243, 251, 30 P.3d 257, 265 (2001).  Because no additional facts are necessary to determine this issue, and because this issue calls for the interpretation of HRS Chapter 386 and its related rules, see Earl M. Jorgensen Co. v. Mark Constr., 56 Haw. 466, 476, 540 P.2d 978, 985 (1975), we will consider this issue.

7

15 as "guidelines,"[2] Wilson argues the rules cannot be applied against her to deny care, so long as the treatment was reasonable and necessary pursuant to HRS § 386-21 (1993).

We do not read the statute so broadly, however. "Judicial deference to agency expertise is a guiding precept where the interpretation and application of broad or ambiguous statutory language by an administrative tribunal are the subject of review." Holi v. AIG Hawai'i Ins. Co., Inc., 113 Hawai'i 196, 206, 150 P.3d 845, 855 (App. 2007) (quoting In re Water Use Permit Applications, 94 Hawai'i 97, 144-45, 9 P.3d 409, 456-57 (2000)). Here, the DOH cites five prior LIRAB decisions that generally establish the LIRAB's practice of permitting out-of-state treatment but requiring compliance with HRS Chapter 386 and HAR Title 12, Chapter 15. "[A]dministrative practice, consistent and generally unchallenged, will not be overturned except for very cogent reasons[.]" Treloar v. Swinerton & Walberg Co., 65 Haw. 415, 424, 653 P.2d 420, 426 (1982) (quoting Waikiki Resort Hotel v. City & Cnty. of Honolulu, 63 Haw. 222, 243, 624 P.2d 1353, 1368 (1981)). We cannot conclude that the LIRAB's interpretation is plainly erroneous or inconsistent with the intent of the statutory mandate. Haole v. State, 111 Hawai'i 144, 152, 140 P.3d 377, 385 (2006). One of the purposes of commission administration is "to maintain supervision over the entire process of seeing that the claimant receives the full benefits" of the compensation law, and the LIRAB's interpretation promotes this purpose. See 9-140 Lex K. Larson, Larson's Workers' Compensation Law § 140.02 (Matthew Bender, Rev. Ed.).

Furthermore, HRS § 386-21 provides that if an employee

---

[2]    Wilson cites additional language from HRS § 386-26 as support, but this language was not added until 2005. See 2005 Haw. Sess. Laws, Sp. Sess., Act 11, §5 at 816 (adding to HRS § 386-26, "The guidelines shall not be considered an authoritative prescription for health care, nor shall they preclude any health care provider from drawing upon the health care provider's medical judgment and expertise in determining the most appropriate care.").

wishes to change physicians, "the employee may do so *in accordance with rules prescribed by the director.*" (Emphasis added.) As the DOH argues, treatment plans, reports, and referrals serve an important purpose in coordinating the claimant's treatment among multiple health care providers, providing notice to the DOH and insurer, and reducing health care costs. We do not accept as a general rule that medical care (even out-of-state care necessitated by relocation) need not be held to the requirements of HRS Chapter 386 and HAR Title 12, Chapter 15.

Wilson also argues that physicians need not comply with the procedural requirements of the workers' compensation law during periods in which the DOH is denying the claim. During the period at issue, the DLIR decision denying the DOH's liability for care after March 11, 2004 was still in place, and Wilson's appeal to the LIRAB was pending. However, nothing in HRS Chapter 386 or in the HAR excuses a health care provider from complying with all requirements while the compensability of the claim remains at issue and regardless of whether the employer is making payments while the claimant's appeal is pending. Therefore, we conclude the LIRAB did not err as a matter of law in applying HRS Chapter 386 and the HAR to Wilson's claim.

B. **Waiver And Estoppel**

Wilson argues the DOH waived strict procedural compliance through its conduct. Specifically, Wilson points to the adjuster's acceptance of Wilson's change of physician from Steven Key, D.C. (Dr. Key) to Dr. Griffin via an informal phone call, without requiring any formal documentation as required by HAR § 12-15-38.[3] However, we conclude waiver is inapplicable

---

[3] The DOH claims the change from Dr. Key to Dr. Griffin was Wilson's first change in physician, and HAR § 12-15-38 requires prior approval only for changes "subsequent to the first change." However, Form WC-1, DOH's Report of Industrial Injury dated May 8, 2003 lists Gayland Yee, M.D. (Dr. Yee) as the
(continued...)

9

because "[w]aiver must be 'intentional.'" <u>Hewahewa v. Lalakea</u>,
35 Haw. 213, 218-19 (Haw Terr. 1939). <u>See also</u> <u>Coon v. City and
Cnty. of Honolulu</u>, 98 Hawai'i 233, 261, 47 P.3d 348, 376 (2002)
("Generally, waiver is defined as an intentional relinquishment
of a known right, a voluntary relinquishment of rights, and the
relinquishment or refusal to use a right.") (quoting <u>In re Estate
of Searl</u>, 72 Haw. 222, 226-27, 811 P.2d 828, 831 (1991)).
Nothing in the record suggests the DOH or the DLIR intended to
waive compliance with the HAR's procedural requirements. In the
adjuster's letter to Wilson accepting Dr. Griffin as the new
attending physician, she informed Wilson that no other primary
care provider would be honored and that all referrals were
subject to the DOH's approval, indicating an intention to enforce
the HAR's procedural requirements.

Based on the particular facts of this case, however, we
conclude the doctrine of quasi-estoppel applies. Hawai'i
recognizes the theory of quasi-estoppel, which is "a species of
equitable estoppel which has its basis in election, waiver,
acquiescence, or even acceptance of benefits and which precludes
a party from asserting to another's disadvantage, a right
inconsistent with a position previously taken by [the party]."
<u>Cvitanovich-Dubie v. Dubie</u>, 123 Hawai'i 266, 276, 231 P.3d 983,
993 (App. 2010), *aff'd*, 125 Haw. 128, 254 P.3d 439 (2011).
Although equitable estoppel requires that the party to be
estopped acted wilfully, <u>Maria v. Freitas</u>, 73 Haw. 266, 273, 832
P.2d 259, 264 (1992), quasi-estoppel does not require proof of
misrepresentation or concealment of facts by one and ignorance of
the other. <u>Roxas v. Marcos</u>, 89 Hawai'i 91, 124, 969 P.2d 1209,

---

[3](...continued)
treating physician, and Dr. Key apparently became the treating physician at
some point between May 20, 2003 and July 21, 2003. Thus, the change from Dr.
Yee to Dr. Key would have been the first change in physician, and under HAR §
12-15-38 the change from Dr. Key to Dr. Griffin required prior approval by the
director or DOH.

1242 (1998).

"Equitable estoppel is a device originating in courts of equity and, as such, depends on a close analysis of individual fact situations for its application." Cosmopolitan Fin. Corp. v. Runnels, 2 Haw. App. 33, 36, 625 P.2d 390, 394 (1981). Before quasi-estoppel can be applied against a party, "it must appear that he possesses full knowledge of all the material particulars and circumstances and was fully apprised of the effect of the acts ratified and of his legal rights in the matter." Anderson v. Anderson, 59 Haw. 575, 589, 585 P.2d 938, 946 (1978) (internal quotation marks omitted). In this case, any action by or notice to the adjuster is imputed to the DOH because HAR § 12-15-1 defines an "employer" as including "a self-insured employer or the self-insured employer's adjuster or designated representative unless clearly indicated otherwise[.]"

The record indicates the employer never expressly approved of Wilson's treatment and apparently did not make any payments for Wilson's treatment from any of the providers during the period at issue.[4] However, our review of the record establishes that the employer had knowledge of Wilson's ongoing out-of-state treatment and noncompliance with the procedural requirements from late January 2005 yet raised no objection to her noncompliance until July 2007. According to a letter from a Mayo Clinic legal representative to Wilson's attorney, the clinic first contacted the adjuster on January 24, 2005 requesting payment for Wilson's unpaid balances. This claim sufficed to apprise the DOH of Wilson's ongoing treatment. Two days later, the clinic received a response from the adjuster stating that the claims were denied and that no payment would be issue. However,

---

[4]     The Mayo Clinic stated it did receive some payments; however, the only payments in the record were made well after December 1, 2006 and are thus irrelevant to whether the DOH gave implied authorization for Wilson's treatment during the period at issue.

11

the denial was apparently based on the DLIR decision denying compensability in place at the time and not on noncompliance with procedure, because the adjuster made no reference to the lack of treatment plans or referrals.

After the LIRAB issued its January 11, 2006 decision in Wilson's favor, the Mayo Clinic resubmitted its bills and contacted the adjuster nine more times regarding the status of its pending bills. The adjuster's responses indicated the bills were under review or being processed. It was not until July 13, 2007 that the adjuster informed the Mayo Clinic for the first time of the need to comply with Hawai'i law.

The DOH also did not make any mention of Wilson's noncompliance during the October 12, 2005 LIRAB hearing appealing the DLIR's decision denying compensability. The record contains multiple communications from June 2005 between Wilson's attorney, the DOH, the adjuster, and Dr. Direnfeld, in which the parties noted Wilson's relocation and treatment from Dr. Maragos and the Mayo Clinic. During discovery and at the hearing, the DOH challenged Dr. Maragos's medical evidence and opinion, but the record contains no indication the DOH ever mentioned the lack of treatment plans or referrals or considered Dr. Maragos's treatment inappropriate in any way. The DLIR's decision ultimately credited Dr. Maragos's opinion, and the DOH did not appeal this decision. The DOH's actions from this hearing are further indication that it considered Dr. Maragos's treatment authorized. Under these circumstances, it was entirely reasonable for Wilson to conclude she could continue obtaining treatment and incurring medical expenses without a treatment plan or referral.

Therefore, the record establishes the DOH had knowledge that Wilson was receiving out-of-state treatment for two and a half years, from late January 2005 to July 2007, before providing any notice that it considered Wilson's treatment unauthorized

12

because of her noncompliance with procedural requirements. Courts and commissions in other jurisdictions have held that an employee may engage medical services "if the employer has expressly or impliedly conveyed to the employee the impression that the employee has authorization to proceed in this fashion, or with full knowledge has over a sustained period of time failed to object to claimant's change of physician." 5-94 Larson's Workers' Compensation Law § 94.02 (listing cases applying estoppel against employers). We hold that the employer's sustained silence in this case amounted to an implied authorization of Wilson's treatment, and we apply the doctrine of quasi-estoppel to avoid an inequitable result.

Furthermore, although the DOH's conduct after December 1, 2006 is not directly relevant to the question of whether the DOH gave Wilson implied authorization during the period at issue, its conduct provides further support for concluding the DOH generally acquiesced in Wilson's treatment. After the LIRAB issued its January 11, 2006 decision in Wilson's favor, the DOH participated in another supplemental hearing before the DLIR on July 27, 2006, at which the DLIR ordered the DOH to pay Wilson temporary total disability benefits upon receiving disability certification from Dr. Maragos. The DOH did not appeal the DLIR's decision, implying that it recognized Dr. Maragos as the attending physician authorized to issue disability certifications. The adjuster also received multiple requests for payment from Wilson's attorney and the Mayo Clinic, and Wilson called and wrote to the adjuster to discuss payment processing. However, the record indicates that neither the adjuster nor the DOH raised the noncompliance issue at any point, either to Wilson or to the DLIR, until the July 13, 2007 letter to the Mayo Clinic.

At oral argument, the DOH argued that estoppel should not apply against it because the June 7, 2004 DLIR decision

13

relieving the DOH of liability, which was in place during the period at issue, should also relieve the DOH of any duty to notify Wilson of procedural defects. Neither party has directed this court to an authority that directly addresses the employer's or the employee's duties pending an ongoing appeal. As discussed above, we concluded the LIRAB did not err as a matter of law in requiring Wilson and her providers to comply with all requirements of HRS Chapter 386 and the HAR pending litigation of compensability. Likewise, we conclude the employer is not relieved of its obligation to maintain communication with the employee and to treat the employee's claim as potentially meritorious until the compensability determination has become final. The record reflects that before the DLIR decision, the adjuster had not timely notified Wilson and her physicians of the procedural requirements and of any defects she found. A DLIR decision denying compensability does not give the employer license to fall silent about known procedural defects, allowing the employee to continue incurring medical expenses, and then raise those defects for the first time only after an adverse LIRAB decision.

In cases such as this, where there are no clear rules governing procedure for seeking treatment out-of-state and during periods in which the employer is held not liable for medical care pending an ongoing appeal, the employer is clearly in a better position to be aware of the requirements of the law and to know when an employee is not satisfying those requirements. The DOH knew from the beginning that Wilson would continue seeking medical care pending the appeal because Dr. Direnfeld's post-IME reports concluded Wilson's symptoms were complex and uncommon and would require further treatment, and the January 2005 contact from the Mayo Clinic provided specific notice of Wilson's out-of-state care. Where the employer has notice of an injured employee's ongoing treatment and the claim's status is unclear,

14

the burden to timely determine whether treatment is inappropriate should be placed on the employer. Therefore, we conclude the DOH is estopped from using Wilson's failure to comply with HAR §§ 12-15-38, 12-15-40, and 12-15-42 to deny liability for Wilson's medical care between May 7, 2004 and December 1, 2006. However, the DOH is not estopped from denying liability on other grounds on remand.

## IV. CONCLUSION

In light of the foregoing analysis, the Decision and Order of the Labor and Industrial Relations Appeals Board filed July 22, 2011 is vacated, and we remand this case to the Disability Compensation Division, Department of Labor and Industrial Relations for further proceedings, including factual determination of whether the medical care was reasonable and related to the work injury.

DATED: Honolulu, Hawai'i, November 29, 2012.

Wayne H. Mukaida
for Claimant-Appellant

Steve K. Miyasaka
Deputy Attorney General
for Employer-Appellee,
Self-Insured
(James E. Halvorson, Deputy
Attorney General, with him on
the brief)

Presiding Judge

Associate Judge

Associate Judge

15